***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the deputy commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case. The parties are properly before the Commission and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Selective Insurance Group was the carrier on the risk at all relevant times.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained compensable back injuries on or about 23 December 1998 and 24 July 1999.
5. Plaintiff's average weekly wage was $398.16, which yields a compensation rate of $265.45 per week, based upon the Form 22. This amount applies to both dates of injury.
6. The parties stipulated the following documentary evidence: (a) Industrial Commission forms; (b) medical records from Dr. P. E. Brown, Dr. Scott M. McCloskey, Western North Carolina Rehabilitation Center, Dr. Michael DeSantis, and Dr. Maher Habashi; (c) 1998 and 1999 W2 Forms; (d) 12 August 2002 Request for Vocational Rehabilitation; (e) Wage Printout from Benjamin's; and (f) Bankruptcy Relief from Stay Order.
 ***********
Based upon all the competent evidence of record, and all reasonable inferences to be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a sixty-two year old female. She began working for the defendant-employer in May 1995 as a furniture salesperson. As part of her duties, plaintiff would occasionally move furniture items to the loading dock or customers' cars. She used a dolly to move large pieces, such as sofas, weighing up to 250 pounds. She also carried lamps, pictures, and dining room chairs.
2. On or about 23 December 1998, plaintiff injured her back as she and a co-worker carried a silver chest out to a customer's car. The chest weighed approximately 75 pounds. Plaintiff fell to the floor in pain after loading the silver chest and returning to the store.
3. Defendants accepted plaintiff's back injury as compensable. She sought treatment from Reid Zenter, D.C., and from her family doctor following the back injury. There is no issue of unpaid medical bills for this treatment. There are no medical records from which the Full Commission may make a finding as to the nature of her complaints or her diagnosis following the initial injury; however, plaintiff did not require treatment or referral to a back specialist, orthopedist or neurosurgeon following the initial back injury in 1998. Likewise, she did not exhibit any difficulty walking nor did she present any evidence that she required the use of a cane for her left leg following the initial compensable injury.
4. Plaintiff continued to work at her regular job following the injury. She was disabled from earning wages from 6-8 February 1999 as a result of the 23 December 1998 compensable injury.
5. On 24 July 1999, plaintiff lifted a ring of upholstery fabric swatches, which weighed between twenty-five to forty pounds. She felt pain in her back. As the day progressed, plaintiff began to have difficulty walking.
6. Defendants accepted plaintiff's second back injury as compensable, although they did not file any documentation with the Industrial Commission, as required under the provisions of the Act.
7. Initially, plaintiff returned to Dr. Zenter for chiropractic manipulation. However, there is no record of the nature of her complaints from which the Full Commission may make any findings regarding the nature of the care.
8. Defendants referred plaintiff to Dr. Paul E. Brown, an orthopedist. Plaintiff saw Dr. Brown on 26 July 1999 for a lumbar strain. On that date, Dr. Brown provided a note authorizing plaintiff to return to work on 2 August 1999 with no restrictions. Plaintiff thereafter saw Dr. Jeffrey Knapp, who was in practice with Dr. Brown. Dr. Knapp referred plaintiff to neurosurgeon Scott M. McCloskey at Catawba Valley Neurosurgical after an MRI appeared to show a nerve root sheath tumor on the left.
9. Dr. McCloskey first treated plaintiff on 27 August 1999. Plaintiff reported a history of injury in December of 1998, which waxed and waned and tended to radiate from the back down the left flank and left leg to the knee. On examination, plaintiff had an abnormal gait, favoring the left leg and supporting it with a cane. Dr. McCloskey recommended surgery for the mass at L1, which was suspected to be a neural sheath tumor or a disk herniation.
10. On 2 September 1999, Dr. McCloskey performed a T12-L1 laminotomy left, an L1-2 partial hemilaminectomy, excision of the disk fragment at L1, and medial facetectomy left. Dr. McCloskey's medical notes indicate that plaintiff had a "large free fragment of disk that was encapsulated[,]" which required "a fairly extensive exposure and excision of this disk from both an intraspinal and extraspinal approach." Plaintiff testified that she was bedridden for six months after the surgery and her husband had to take time off from work to assist her with activities of daily living.
11. Dr. McCloskey opined that by 8 February 2000, plaintiff had reached maximum medical improvement and sustained a twenty percent (20%) impairment rating to her back. He ordered a functional capacity evaluation (FCE) to determine what, if any, physical limitations she would retain, which would affect her ability to work. An FCE was conducted on 9 March 2000 at Western North Carolina Rehabilitation Center. According to the report from the FCE, plaintiff gave sub-maximal effort, inconsistent performance, and engaged in self-limiting behavior throughout the FCE. Plaintiff was ordered into a work hardening program to prepare her for a gradual return to work.
12. On 19 June 2000, plaintiff returned to work with defendant-employer on a gradual schedule. Plaintiff was given work restrictions consistent with the results of her second FCE conducted on 2 June 2000. Plaintiff was working full duty by 6 July 2000.
13. By 16 August 2000, Dr. McCloskey noted plaintiff had returned to full-time duty work and was doing exceptionally well. On 13 November 2000, Dr. McCloskey noted and the Full Commission finds as fact that plaintiff had reached maximum medical improvement, and he released her from his care. The permanent restrictions were being followed by plaintiff's employer. Plaintiff sustained a twenty percent (20%) permanent partial impairment to her back as a result of her compensable injury. Dr. McCloskey's previous determination that plaintiff had reached maximum medical improvement on 8 February 2000 was premature and is given less weight than his subsequent determinations of maximum medical improvement.
14. As a result of the 24 July 1999 back injury, plaintiff was totally disabled from 26 July 1999 to 19 June 2000. Defendants paid her temporary total disability benefits during this time. Defendants paid temporary partial disability benefits from 19 June 2000 through 5 July 2000. Plaintiff returned to her pre-injury wages on 6 July 2000.
15. On 14 November 2000, plaintiff began treating with Dr. Michael C. DeSantis, a board certified family practitioner, for unrelated general medical conditions.
16. In 2001, plaintiff asked Mr. Reggie Rhoney, the owner of the store, for a raise. He told her "no" because she had already cost him a lot of money. Thereafter, plaintiff continued to work full duty until sometime in January 2002, when defendant-employer decided to close the store. Plaintiff was the first person laid off, but the store actually closed about a month later. Defendant-employer filed for bankruptcy under Chapter 7.
17. On 7 January 2002, plaintiff returned to Dr. Michael C. DeSantis, her family physician, for a recheck on her hypertension, and for treatment of stress and depression. Plaintiff complained of difficulties with her boss concerning her job status since her injury. She also discussed problems due to her daughter's alcoholism. Dr. DeSantis found her depression partly multifactoral. Dr. DeSantis prescribed Celexa for depression. During the course of his treatment, Dr. DeSantis also prescribed a variety of pain medications in an attempt to relieve plaintiff's chronic back pain. Plaintiff frequently told Dr. DeSantis that she loved her job and had always been a hard worker.
18. On 3 June 2002, plaintiff began working at Benjamin's Fine Clothiers. She earned approximately $204.00 per week, working twenty-four hours per week. Plaintiff last worked for Benjamin's Fine Clothiers on or about 12 April 2003. She was thereafter approved for Social Security Disability.
19. Plaintiff returned to Dr. McCloskey on 5 August 2002, at which time she complained of problems lifting over ten pounds. She reported her back would "seize up" on her. Dr. McCloskey advised that the muscle spasms were a natural consequence of surgery. Based on plaintiff's pain complaints, Dr. McCloskey assigned permanent work restrictions of no lifting over ten pounds, avoid twisting and bending, and to alternate between sitting and standing.
20. Another MRI was completed in April 2003. It revealed scar tissue in the surgical area, inflammation at the L1-2 bone, annular tears at L2-3 and L3-4, and bulges at L4-5 and L5-S1. The annular tears at L2-3 and L3-4 were new conditions, which were the probable cause of plaintiff's increased back pain. However, there is insufficient medical evidence of record to causally relate these tears to the prior compensable back injuries. Dr. McCloskey testified that the new conditions were not work-related, but stemmed from the degenerative process.
21. The Full Commission finds that the annular tears at L2-3 and L3-4 were not causally related to plaintiff's compensable injury of 24 July 1999 and that they did not constitute a change of condition.
22. Based upon the history given of plaintiff's back injuries on 23 December 1998 and 24 July 1999, Dr. McCloskey opined and the Full Commission finds as fact that both injuries jointly caused the bulges at L4-5 and L5-S1. He further opined and the Full Commission finds as fact that plaintiff was at a risk of recurrent disk rupture as a result of her surgery.
23. Although plaintiff contends that her hypertension was caused by her compensable injuries, based on the greater weight of the evidence, the Full Commission finds that plaintiff's hypertension was not caused or aggravated by her back injuries. Plaintiff is a smoker and has a very strong family history of cardiovascular disease.
24. Based on the greater weight of the evidence, the Full Commission finds that plaintiff's depression was either caused or exacerbated by the compensable back injuries, the chronic pain, and her work status. Dr. DeSantis opined and the Full Commission finds as fact that plaintiff may benefit from a referral to a chronic pain specialist. In a letter dated 23 March 2003, Dr. DeSantis suggested that plaintiff should not work in any employment because of the effect on her quality of life.
25. Plaintiff reached maximum medical improvement on or before 13 November 2000 and had returned to work earning the same or greater wages by 6 July 2000. Plaintiff's incapacity to work due to her compensable injury ended 6 July 2000. Although she had work restrictions, plaintiff was capable of earning pre-injury wages at the time she was laid off from work in January 2002.
26. On 17 January 2002, plaintiff filed an Industrial Commission Form 33 request for hearing in Industrial Commission File Number 987125, alleging that defendant-employer had failed to pay permanent partial disability benefits after several requests from plaintiff. Plaintiff referenced Industrial Commission File Number 144263. On 25 January 2002, defendant-carrier filed a Form 62 indicating plaintiff was being paid temporary partial benefits for the period of 22 June 2000 to 5 July 2000. Plaintiff also filed a Form 33 request for hearing on 17 January 2002 in Industrial Commission File Number 144263, alleging that defendants had failed to pay permanent partial disability benefits despite several requests. Plaintiff referenced Industrial Commission File Number 987125.
27. On 12 August 2002, plaintiff's counsel wrote to Claims Adjuster Charlotte Stapleton requesting that defendants provide vocational rehabilitation to plaintiff due to her additional permanent work restrictions given by Dr. McCloskey. Plaintiff was working part-time at Benjamin Clothiers at the time. On 20 August 2002, plaintiff filed a Form 33 request for hearing in Industrial Commission Files 987125 and 144263, requesting permanent partial disability benefits, lifetime medial expenses, vocational rehabilitation, treatment for depression and hypertension. Plaintiff filed a Form 18M, dated 21 August 2002 in Industrial Commission File Numbers 987125 and 144263, requesting lifetime medical care. On 5 September 2002, the Commission requested that adjuster Charlotte Stapleton provide a response.
28. Plaintiff properly filed two separate Form 18 notices of accident for the 24 July 1999 injury and the 23 December 1998 injury. These claims were assigned Industrial Commission File Numbers 144263 and 987125, respectively. Defendants voluntarily paid compensation for plaintiff's 24 July 1999 injury, but failed to file the proper Industrial Commission form to document that they were admitting the claim. Plaintiff missed less than 7 days from work due to her 23 December 1998 injury; therefore, no indemnity compensation was due.
 ***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 23 December 1998, which is filed under I.C. No. 987125. Plaintiff is not entitled to temporary total disability compensation, as she did not miss the requisite number of days from work. N.C. Gen. Stat. §§ 97-28; 97-31.
2. Under I.C. No. 987125, defendants paid for medical expenses incurred as a result of the compensable injury at the time the treatment was provided. N.C. Gen. Stat. §§ 97-2(19); 97-25.
3. Plaintiff sustained a compensable injury by accident on 24 December 1999, which is documented in Industrial Commission File 144263. As a result of plaintiff's compensable injury, defendants paid temporary total disability and temporary partial disability during the periods plaintiff was out of work through 6 July 2000, when plaintiff returned to work earning pre-injury wages. N.C. Gen. Stat. §§ 97-2(9); 97-29; 97-30.
4. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work[.]"Watkins v. Central Motor Lines, 279 N.C. 132,181 S.E.2d 588 (1971). However, as stated in Commission Rule 404(1), this presumption of continued disability is rebuttable. Stone v. G. G.Builders, 346 N.C. 154, 484 S.E.2d 365 (1997). In the instant case, defendants have successfully rebutted the presumption of continued disability by showing plaintiff returned to full time work on 6 July 2000 and continued to work earning the same or greater wages until sometime in January 2002, when the employer decided to close its business and file for bankruptcy. Therefore, plaintiff is not entitled to additional temporary total or temporary partial disability benefits as a result of this injury.
5. Under I.C. No. 144263, plaintiff is entitled to elect between partial disability compensation under N.C. Gen. Stat. §97-30 or permanent partial disability compensation under N.C. Gen. Stat. § 97-31 at the rate of $265.45 per week for sixty weeks for the twenty percent (20%) rating to her back. Since plaintiff returned to work and regained her pre-injury wage earning capacity by 6 July 2000, compensation under N.C. Gen. Stat. § 97-31 was her more munificent remedy. N.C. Gen. Stat. §97-31(23).
6. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred in the future as a result of her compensable injuries for so long as such treatment is required to provide relief, effect a cure or lessen the period of disability, including referral to a chronic pain specialist and treatment for depression. N.C. Gen. Stat. § 97-2(19). Plaintiff is not entitled to have defendants pay for treatment for hypertension or the annular tears at L2-3 and L3-4.
7. Pursuant to I.C. Rule 801, defendants are sanctioned for failure to properly acknowledge plaintiff's claim and file appropriate documentation of the same in I.C. 144263, in accordance with the provisions of N.C. Gen. Stat. § 97-18, I.C. Rule 601, and I.C. Rule 501. As an appropriate sanction for this violation, defendants shall pay a penalty of $500.00. While defendants may contend they erroneously filed forms bearing the I.C. number of the other file, the fact remains that none of the documents was timely filed bearing either designation. Once plaintiff had been disabled from work the requisite number of days, the Act required the defendants to file appropriate documentation to reflect this was a lost time injury and that benefits were being paid.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under Industrial Commission File Number 144263, and subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff permanent partial disability compensation at the rate of $265.45 per week for sixty weeks.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 2 above is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay medical expenses incurred or to be incurred under Industrial Commission File Numbers 144263 and 987125 when bills for the same have been approved, in accordance with the provisions of the Act and paragraph 6 of the Conclusions of Law herein.
4. Defendants shall pay a penalty of $500.00 for failure to file proper documentation in Industrial Commission File Number 144263.
5. Defendants shall pay the costs.
This the ___ day of July 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER 01